**UNITED STATES BANKRUPTCY COURT**
**SOUTHERN DISTRICT OF TEXAS**
**HOUSTON DIVISION**

| | § | |
|---|---|---|
| **In re:** | § | **Chapter 11** |
| | § | |
| **TABULA RASA PARTNERS, LLC,** | § | **Case No. 21-33859** |
| | § | |
| Debtor.[1] | § | **(Emergency Relief Requested)** |
| | § | |

**DEBTOR'S EMERGENCY MOTION FOR INTERIM AND FINAL ORDERS**
**(I) AUTHORIZING USE OF CASH COLLATERAL;**
**AND (II) GRANTING RELATED RELIEF**

> **If you object to the relief requested or you believe that emergency consideration is not warranted, you must appear at the hearing if one is set, or file a written response prior to the date that relief is requested in the preceding paragraph. Otherwise, the Court may treat the pleading as unopposed and grant the relief requested.**
>
> **A hearing will be conducted on this matter on December 10, 2021 at 1:00 pm in Courtroom 401, Bob Casey Federal Courthouse, 515 Rusk, Houston, Texas 77002.**
>
> **Participation at the hearing will only be permitted by an audio and video connection.**
>
> **Audio communication will be by use of the Court's dial-in facility. You may access the facility at 832-917-1510. Once connected, you will be asked to enter the conference room number. Judge Lopez's conference room number is 590153.**
> **Video communication will be by use of the GoToMeeting platform. Connect via the free GoToMeeting application or click the link on Judge Lopez's home page. The meeting code is "JudgeLopez". Click the settings icon in the upper right corner and enter your name under the personal information setting.**
>
> **Hearing appearances must be made electronically in advance of both electronic and in-person hearings. To make your appearance, click the "Electronic Appearance" link on Judge Lopez's home page. Select the case name, complete the required fields and click "Submit" to complete your appearance.**

---

[1] The Debtor's service address for purposes of this chapter 11 case is 1455 West Loop South, Suite 230, Houston, TX 77027.

1

13141675

Tabula Rasa Partners, LLC, as debtor and debtor in possession in the above-captioned case (the "Debtor") hereby moves (the "Motion") this Court for entry of orders under sections 105(a), 361, 363, and 1108 of title 11 of the United States Code (the "Bankruptcy Code"), Rules 2002, 4001, 6003, 6004, and 9014 of the Federal Rules of Bankruptcy Procedure (the "Bankruptcy Rules"), Rules 4001-1, and 9013-1(i) of the Bankruptcy Local Rules for the Southern District of Texas (the "Bankruptcy Local Rules"), (i) authorizing the Debtor's use of cash collateral, and (ii) granting related relief.  In support of the Motion, the Debtor relies upon and incorporates by reference the *Declaration of Michael Keener in Support of Chapter 11 Petition and First Day Pleadings* (the "First Day Declaration"),[2] filed with the Court concurrently herewith. In further support of the Motion, the Debtor, by and through its proposed undersigned counsel, respectfully represents:

## PRELIMINARY STATEMENT

1. The Debtor requires use of cash on an emergency basis in the operation of its business and has prepared a proposed cash budget (the "Budget").[3]  The Debtor currently has approximately $2,351,188.00 in cash in its operating bank account, which is held at JPMorgan Chase Bank N.A. (the "Operating Account").  Chase is not a lender to the Debtor.  However, there is a blocked account control agreement in favor of Cibolo Energy Partners, LLC (the "Cibolo Agent"), in its capacity as collateral agent under the Guarantee and Collateral Agreement dated as of July 12, 2018.  The Cibolo Agent is also the administrative agent under the Note Purchase Agreement and the collateral agent under the Intercreditor Agreement (each defined below).  The Operating Account holds funds that are the proceeds from operation of the Debtor's business.

---

[2] Capitalized terms not otherwise defined herein have the meaning ascribed to them in the First Day Declaration.

[3] The definition of Budget herein includes a proposed aggregate 10% variance for revenues and expenses.

Funds in the Operating Account are cash collateral of the Lenders (defined below). The Cibolo Agent has agreed to the use of cash collateral based on the terms set forth in this Motion and the proposed order.

2. The Lender's interest in any cash collateral is adequately protected by the Debtor's use of that cash to operate its business and maintain the value of the Lender's collateral. In addition, the Debtor will provide the Lenders a replacement lien of the same scope, validity and priority as the Lenders' prepetition liens and will make adequate protection payments to the Lenders as described below.

## JURISDICTION AND VENUE

3. The United States Bankruptcy Court for the Southern District of Texas (the "Court") has jurisdiction to consider this Motion under 28 U.S.C. § 1334. This is a core proceeding under 28 U.S.C. § 157(b)(2). Venue of these cases and this Motion in this district is proper under 28 U.S.C. § 1408.

4. The statutory and other predicates for the relief requested herein are Bankruptcy Code sections 105(a), 361, 363, and 1108, Bankruptcy Rules 2002, 4001, 6003, 6004, and 9014, Bankruptcy Local Rules 4001-1, 4002-1, and 9013-1(i).

## EMERGENCY CONSIDERATION

5. Pursuant to Bankruptcy Local Rule 9013-1(i) and Bankruptcy Rule 6003, the Debtor requests emergency consideration of this Motion. Bankruptcy Rule 6003 provides that the relief requested in this Motion may be granted if the "relief is necessary to avoid immediate and irreparable harm." FED. R. BANKR. P. 6003. As set forth in this Motion and the First Day Declaration, the Debtor believes an immediate and orderly transition into chapter 11 is critical to the viability of its business and that any delay in granting the relief requested would hinder the

Debtor's operations and cause immediate and irreparable harm. The Motion seeks authority to utilize the Debtor's cash that is critical to pay expenses and the amounts requested in the other first day motions. Failure to receive the applicable relief during the first 21 days of this chapter 11 case would thus severely disrupt the Debtor's operations. As such, the Debtor believes that emergency consideration is necessary and request that this Motion be heard at the Debtor's first day hearings.

## BACKGROUND

**A.   The Chapter 11 Cases**

6.   On December 3, 2021 (the "Petition Date"), the Debtor commenced its case by filing a petition for relief under chapter 11 of the Bankruptcy Code (the "Chapter 11 Case").

7.   The Debtor continues to operate its business and manage its properties as debtor and debtor in possession pursuant to sections 1107(a) and 1108 of the Bankruptcy Code.

8.   As of the filing of this Motion, no creditors' committee has been appointed in the Chapter 11 Case by the Office of the United States Trustee for the Southern District of Texas (the "U.S. Trustee"). No trustee or examiner has been appointed in the Chapter 11 Case.

9.   Additional information regarding the Debtor and the Chapter 11 Case, including the Debtor's business operations, capital structure, financial condition, and the reasons for and objectives of the Chapter 11 Case, is set forth in the First Day Declaration, filed contemporaneously herewith and incorporated herein by reference.

**B.   The Debtor's Assets and Operations**

10.   TRP is a Houston, Texas based exploration and production company. TRP is a working interest owner in two active oil-producing assets in the Central Basin Platform of the Permian Basin in West Texas, the East Seminole San Andres Unit and Lindoss Unit in Gaines County and the Emma San Andres Unit and Emma Cowden Glorietta Unit in Andrews County.

These assets are operated by, Perdure Petroleum, LLC ("Perdure"), another working interest owner.  Pursuant to a joint operating agreement, Perdure is responsible for the payment of all trade vendors, independent contractors, and royalties on a monthly basis.  TRP is also a working interest owner in the La Veta asset which is a $CO_2$ source field in Huerfano County, Colorado. The La Veta asset is currently shut-in, and its associated gas plant is idled. Perdure contract operates the La Veta field.

11. In July 2018, Cibolo Energy Partners I, LP ("Cibolo") provided TRP a senior secured first lien facility to buyout an existing volumetric production payment, reduce existing payables, and provide development capital. Over the next two years, Cibolo funded additional debt that was used for field development and $CO_2$ purchases. Due to low oil prices during the depth of the COVID-19 crisis, certain fields were shut in and, in July 2020, TRP entered into an out-of-court financial restructuring agreement with the equity sponsor.  The fields have since been returned to production.  Cibolo converted a portion of its debt into equity and now owns 100% of the equity in TRP.  Additionally, in September 2020, TRP sold a small working interest position in the Emma and Seminole fields to Perdure.

**C.     Prepetition Capital Structure**

12. On or about July 9, 2018, the Debtor entered into that certain ISDA Master Agreement with BP Energy Company ("BP") (the "Hedging Agreement").  The Debtor's obligations under the Hedging Agreement are secured by liens on all of the Debtor's assets.

13. On July 12, 2018, Cibolo entered into a Note Purchase Agreement, pursuant to which Cibolo held approximately $15 Million of notes.  The Debtor's obligations under the Note Purchase Agreement are secured by liens on all of the Debtor's assets.

14. On July 12, 2018, the Debtor, BP, and Cibolo entered into an Intercreditor Agreement pursuant to which the obligations to and liens held by BP and Cibolo are *pari passu*. The Cibolo Agent is the administrative agent under the Note Purchase Agreement and the collateral agent under the Intercreditor Agreement.

15. Between July 2018 and March 2020, Cibolo subsequently funded an incremental $25 million under the Note Purchase Agreement to finance $CO_2$ purchases and field development bringing the Debtors total secured debt amount to $40 million.

16. On July 31, 2020, Cibolo and the Debtor refinanced the debt by amending and restating the Note Purchase Agreement (the "Amended Note Purchase Agreement"). Pursuant to the Amended Note Purchase Agreement, Cibolo exchanged approximately $19.8 million of the Debtor's obligations under the Amended Note Purchase Agreement for 100% of the equity interests in the Debtor, leaving approximately $22.2 million owed on the Amended Note Purchase Agreement.

17. As of the Petition Date, the total amount due under the Amended Note Purchase Agreement is approximately $19.9 million. The maturity date for the obligations under the Amended Note Purchase Agreement is July 12, 2022.

18. As of the Petition Date, there are no amounts due under the Hedging Agreement. As of the Petition Date, the mark-to-market liability on the Hedging Agreement was approximately $1 million (in amounts due from the Debtor).

## RELIEF REQUESTED

19. The Debtor requests the entry of interim and final orders authorizing the use of cash collateral and scheduling a final hearing.

## BASIS FOR THE RELIEF REQUESTED

**A.     The Use of Cash Collateral Is Warranted and Should Be Approved.**

20.     Section 363(a) of the Bankruptcy Code defines "cash collateral" as follows:

> [C]ash, negotiable instruments, documents of title, securities, deposit accounts, or other cash equivalents whenever acquired in which the estate and an entity other than the estate have an interest and includes the proceeds, products, offspring rents, or profits of property . . . subject to a security interest as provided in section 552(b) of this title, whether existing before or after the commencement of a case under this title.

11 U.S.C. § 363(c)(1).

21.     Pursuant to section 363(c)(2) of the Bankruptcy Code, a debtor may not use cash collateral unless "(A) each entity that has an interest in such cash collateral consents; or (B) the court, after notice and a hearing, authorizes such use, sale, or lease in accordance with the provisions of this section." 11 U.S.C. § 363(c)(2).  In turn, Section 363(e) of the Bankruptcy Code requires the Debtor to adequately protect secured creditors' interest in property to be used by the Debtor against any diminution in value of such interest resulting from the Debtor's use of the property during the chapter 11 proceedings.

22.     What constitutes sufficient adequate protection is decided on a case-by-case basis. *See In re Columbia Gas Sys., Inc.,* 1992 WL 79323, at *2 (Bankr. D. Del. Feb. 18, 1992).  Adequate protection can take various forms, including operating the Debtor's business, the requirement to spend funds only pursuant to an approved budget, the granting of replacement liens, and the existence of an equity cushion. 3 Collier on Bankruptcy ¶ 363.05[3] (2021).

23.     A secured creditor is not entitled to adequate protection of the decline in any equity cushion from use of cash collateral, and is only entitled to protection against diminution in the value of its secured claim. 3 Collier on Bankruptcy ¶ 361.02[2][a] (2021); *see also In re WestPoint Stevens, Inc.*, 600 F.3d 231 (2d Cir. 2010); *In re Delta Resources, Inc.,* 54 F.3d 722, 730 (11th Cir.

7

1995) (holding that periodic postpetition adequate protection payments need only protect against diminution in the value of the collateral); *In re Ainsworth*, 2018 WL 5304719, at *11 (Bankr. S.D. Tex. Oct. 23, 2018) (finding secured party's position at risk based on future diminution in value of collateral).

24. Based on the Debtor's continued operations pursuant to the Budget, the Debtor's provision of a replacement lien, and the payment of adequate protection, the Debtor respectfully submits that the use of cash collateral is (a) fair and reasonable, (b) satisfies the requirements of sections 363(c)(2) and 363(e) of the Bankruptcy Code, and (c) in the best interests of the Debtor and its estate.

**Concise Statement Pursuant to Bankruptcy Rule 4001**

25. The below chart contains a summary of the material terms of the proposed use of Cash Collateral, together with references to the applicable sections of the relevant source documents, as required by Bankruptcy Rule 4001(b).

| **Summary of Material Terms** | | **Location** |
|---|---|---|
| **Parties with an Interest in Cash Collateral** <br> Bankruptcy Rule 4001(b)(1)(B)(i) | The following parties have an interest in the Cash Collateral: <br> • Cibolo Energy Partners, LLC in its capacity as collateral agent for BP Energy Company and Cibolo Energy Partners I, LP | Cash Collateral Order |
| **The Purposes for the Use of the Cash Collateral** <br> Bankruptcy Rule 4001(b)(1)(B)(ii) | • Payment of operating expenses, as set forth in the Budget, including payments for joint interest billings and transportation costs <br> • Payment of administrative and professional costs. | Budget |
| **The Material Terms, Including Duration, of the Use of Cash Collateral** <br> Bankruptcy Rule 4001(b)(1)(B)(iii) | • Use of cash collateral on an interim basis until final hearing. <br> • Use of cash collateral on final basis for duration of Budget, as may be supplemented. <br> • No stipulations or releases. | Cash Collateral Order and Budget |

| Summary of Material Terms | | Location |
|---|---|---|
| **Any Liens, Cash Payments, or Other Adequate Protection That Will Be Provided To Each Entity With An Interest In the Cash Collateral** Bankruptcy Rule 4001(b)(1)(B)(iv) | <ul><li>The Debtor will continue to operate the business.</li><li>The Debtor will only pay expenses pursuant to the Budget, unless otherwise ordered.</li><li>The Debtor proposes to grant the Cibolo Agent a replacement lien to the same extent, priority and validity as the prepetition liens.</li><li>The Debtor will make timely interest payments to Cibolo pursuant to the terms of the Amended Note Purchase Agreement</li><li>The Debtor will make timely payments of amounts due to BP pursuant to the terms of the Hedging Agreement.</li></ul> | Cash Collateral Order |

### Statement Regarding Significant Provisions

26.  Although this case is not subject to the Complex Case Procedures, the Debtor notes that the Cash Collateral Order does not contain any of the provisions (the "Significant Provisions")[4] identified in the Complex Case Procedures as provisions to highlight in the motion approving the use of cash collateral.

### WAIVER OF BANKRUPTCY RULE 6004(h)

27.  Bankruptcy Rule 6004(h) provides that "[a]n order authorizing the use, sale, or lease of property other than cash collateral is stayed until the expiration of 14 days after entry of the order, unless the court orders otherwise." FED. R. BANKR. P. 6004(h). As described above, the relief that the Debtor seeks in this Motion is necessary for the Debtor to operate without

---

[4]  Significant Provisions refer to those provisions that: (a) include sale or plan confirmation milestones; (b) cross-collateralization; (c) roll-ups (including (i) provision deeming pre-petition debt to be post-petition debt; and (ii) provisions requiring the proceeds of post-petition loans to be used to repay pre-petition debt); (d) liens on avoidance actions or proceeds of avoidance actions; (e) default provisions and remedies (including (i) provisions terminating the automatic stay without further order, (ii) provisions waiving rights to challenge lenders' ability to exercise post-default remedies; and (iii) provisions limited required proof of altering the burden of proof at post-default hearings); (f) releases of claims; (g) limitations on the use of cash collateral other than general "carve-outs" to pay approved fees and expenses of advisors to official committees or future trustees; (h) priming lien; and (i) any other provision that limits the ability of estate fiduciaries to fulfill their duties under the Bankruptcy Code and applicable law.

interruption and to preserve value for their estates. Accordingly, the Debtor respectfully requests that the Court waive the fourteen-day stay imposed by Bankruptcy Rule 6004(h), as the exigent nature of the relief sought herein justifies immediate relief.

## RESERVATION OF RIGHTS

28. Nothing contained in this Motion is or should be construed as: (a) an admission as to the validity of any claim against the Debtor; (b) a waiver of the Debtor's rights to dispute any claim on any grounds; (c) a promise to pay any claim; (d) an assumption or rejection of any executory contract or unexpired lease pursuant to section 365 of the Bankruptcy Code; or (e) otherwise affect the Debtor's rights under section 365 of the Bankruptcy Code to assume or reject any executory contract with any party subject to this Motion.

## NOTICE

29. Notice of this Motion shall be given to (a) the Office of the United States Trustee; (b) Sunoco; (c) BP; (d) Cibolo Energy Partners; (e) any party that has requested notice pursuant to Bankruptcy Rule 2002 as of the time of service; and (f) any party required to be served under Bankruptcy Local Rule 9013-1(d). Due to the nature of the relief requested herein, the Debtor submits that no other or further notice need be provided.

## CONCLUSION

WHEREFORE, the Debtor respectfully requests that the Court (i) enter the interim cash collateral order; (ii) schedule a final hearing; and (iii) grant such other and further relief as is just and proper.

Dated: December 8, 2021
Houston, Texas

Respectfully submitted,

**PORTER HEDGES LLP**

By: */s/ Aaron J. Power*
Joshua W. Wolfshohl (TX Bar No. 24038592)
Aaron J. Power (TX Bar No. 24058058)
Bryan L. Rochelle (TX Bar No. 24107979)
1000 Main Street, 36th Floor
Houston, Texas 77002
Telephone: (713) 226-6000
Facsimile: (713) 226-6248
jwolfshohl@porterhedges.com
apower@porterhedges.com
brochelle@porterhedges.com

**PROPOSED COUNSEL FOR DEBTOR
AND DEBTOR IN POSSESSION**

### Certificate of Accuracy

I certify that the foregoing statements are true and accurate to the best of my knowledge. This statement is being made pursuant to Local Rule 9013-12(i).

*/s/ Michael Keener*
Michael Keener